UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INTERNATIONAL BROTHERHOOD
OF TEAMSTERS, AIRLINE DIVISION,                    Case Number 15-13527
and AIRLINE PROFESSIONALS                          Honorable David M. Lawson
ASSOCIATION OF THE INTERNATIONAL
BROTHERHOOD OF TEAMSTERS,
LOCAL NO. 1224,

        Plaintiffs,

v.

KALITTA AIR, LLC,

        Defendant.

_____/

## OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

The plaintiff labor union and defendant Kalitta Air, an air freight company, are in the midst of negotiations to amend the terms of a collective bargaining agreement addressing, among other things, the pay provisions for pilots, including newly hired pilots. While the negotiations are ongoing, Kalitta unilaterally increased the pay for new hires, although not to the level demanded by the union in its negotiating sessions. Kalitta says that it needs to pay more to new pilots because the pilot market is thin, it needs to attract more pilots to satisfy customer demands, and nothing in the current CBA prohibits it from increasing pay for newly hired pilots. The plaintiffs have filed the present lawsuit seeking a preliminary injunction under the Railroad Labor Act ("RLA"), 45 U.S.C. § 151, *et seq.* to preserve the *status quo* while negotiations are ongoing. Kalitta has filed an answer in opposition, and the plaintiffs filed a reply; the Court then scheduled a hearing for October 30, 2015. However, the attorneys for the defendant stated that they were unavailable on that date, and because the motion papers adequately set forth the relevant facts and law, and oral argument will

not aid in the disposition of the motion, it is **ORDERED** that the motion be decided on the papers submitted.  *See* E.D. Mich. LR 7.1(f)(2).

A key question presented here is whether the dispute identified in the complaint is a "major dispute" or a "minor dispute" under the RLA.  A major dispute may be addressed by a federal court, and injunctive relief to preserve the *status quo* may be ordered.  The Court has no jurisdiction over a minor dispute; those disputes must be submitted to compulsory and binding arbitration before a separate entity.  Here, the dispute addresses the modification of a CBA relating to rates of pay, rather than the interpretation of an existing agreement.  Kalitta's arguments to the contrary are frivolous or insubstantial.  Therefore, the dispute is a major dispute over which this Court has jurisdiction. Moreover, the plaintiffs have demonstrated the right to an injunction to preserve the *status quo*, which will be granted.

I.

The plaintiffs are the International Brotherhood of Teamsters, Airline Division and Airline Professionals Association of the International Brotherhood of Teamsters, Local No. 1224.  Local 1224 is a labor organization and the exclusive bargaining representative of the pilots employed by Kalitta.  Kalitta is an air freight carrier that directly employs Local 1224-represented pilots.  The parties have entered into a series of collective bargaining agreements over the years, all negotiated under the RLA.  Local 1224 alleges that the CBA became effective August 1, 2007.

Kalitta operates heavy turbine-powered aircraft, for which its pilots must be properly certificated and type-rated under regulations promulgated by the Federal Aviation Administration (FAA).  That procedure entails a session of ground school and flight simulator training, followed by flight time in the actual aircraft under the supervision of a check airman approved by the FAA.

-2-

That time-in-aircraft is referred to as "Operating Experience," or "OE," in the CBA.  Until a pilot completes OE, he or  she is considered to be in training.

Under Section 5(A) of the current CBA — the provision the parties seek to modify in the ongoing negotiations — a "new hire Crewmember who receives Training prior to his qualification as a Crewmember will be paid six hundred dollars ($600.00) per week while in Training. A new hire Crewmember will not receive Flight Pay until he completes OE."  So under the current terms of the CBA, a newly hired pilot will receive a $600 per week training rate, rather than the higher "flight pay" rate received by regular pilots, until his or her training is complete.

On May 31, 2011, Local 1224 sent a notice to Kalitta under Section 6 of the RLA, 45 U.S.C. § 156, to begin the statutory process to negotiate and amend the CBA.  The RLA requires that "[c]arriers and representatives of the employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules, or working conditions . . . ."  *Ibid.* Thereafter, the parties began negotiating terms and conditions of employment, but have not yet reached an agreement to amend the CBA.  On August 23, 2013, the parties jointly requested mediation by the National Mediation Board.  Local 1224 says that it has submitted a proposal to raise the new hire pay, but Kalitta has not responded to the proposal.  Instead, the plaintiffs allege that Kalitta engaged in unlawful "self help" by changing the new hire pay without an agreement with Local 1224 or exhausting the statutory procedure for bargaining changes to agreements under the RLA.

According to Local 1224, Kalitta  unilaterally changed the new hire pay rate from $600 per week to the actual flight pay rate of $65.52 per hour.  That move increased new hire pay to approximately $1,000 per week.  On September 30, 2015, Local 1224 wrote to Kalitta and

-3-

demanded that it cease and desist from making such a change and further requested that it restore the *status quo*.  On October 2, 2015, the defendant responded that "[i]t is Kalitta's position that the Management Rights and the Agency Shop Provisions of the current Collective Bargaining Agreement with the [union] authorizes the increase in New Hire Pay."  However, to resolve the matter, the defendant suggested the parties "execute a side letter agreement allowing the increase in New Hire Pay."  Local 1224 responded to the Kalitta letter again demanding that Kalitta cease and desist.  When Kalitta refused, this lawsuit followed, along with the present request for a preliminary injunction.

## II.

### A.

The parties do not dispute that Local 1224 is a bargaining representative, and Kalitta is a carrier, within the meaning of the RLA, 45 U.S.C. §§ 151 Sixth, 151 First, 181.  One of the main purposes for which Congress enacted the RLA was "[t]o avoid any interruption to commerce or to the operation of any [air or rail] carrier engaged therein."  45 U.S.C. § 151a(1).  To achieve that goal, the RLA specifies mandatory procedures for resolving disputes between labor unions and carriers. 45 U.S.C. § 151a.  To determine which of the RLA's procedures are to be followed in resolving such disputes, courts have classified those disputes as either "major" or "minor."  *See Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 732 (1945).

"In the event of a major dispute, the RLA requires the parties to undergo a lengthy process of bargaining and mediation."  *Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 302-03 (1989).  The process begins when a party desiring to make a change affecting the "'rates of pay, rules, or working conditions" gives a thirty-day written notice to the other party of the intended

-4-

change, known as a "Section 6 notice.'" *Wheeling & Lake Erie Ry. Co. v. Bhd. of Locomotive Engineers & Trainmen*, 789 F.3d 681, 690 (6th Cir. 2015) (quoting 45 U.S.C. § 156).  After the Section 6 notice is received, the parties must designate a time and place to begin negotiations.  *Ibid*. "If the parties' private negotiations are unsuccessful, then the dispute must be mediated by the parties under the auspices of the National Mediation Board."  *Ibid*.  "If mediation does not succeed, the parties must voluntarily accept or reject arbitration.  If the major dispute continues after arbitration, the matter may finally make its way to the President's desk for possible intervention to secure a resolution of the dispute before a strike occurs that would impact the nation's transportation system."  *Id*. at 690-91 (citing; *Burley*, 325 U.S. at 725; *Consol. Rail Corp.*, 491 U.S. at 303 n. 3; 45 U.S.C. § 160).

"Until [the parties] have exhausted those procedures, the parties are obligated to maintain the *status quo*, and the employer *may not implement the contested change in rates of pay*, rules, or working conditions.  The district courts have subject-matter jurisdiction to enjoin a violation of the *status quo* pending completion of the required procedures, without the customary showing of irreparable injury."  *Consol. Rail Corp.*, 491 U.S at 303 (emphasis added) (citing *Detroit & T.S.L.R. Co. v. Transportation Union*, 396 U.S. 142 (1969)).

By contrast, when negotiations fail over a minor dispute, the parties are required "to submit the dispute to compulsory and binding arbitration before the National Railroad Adjustment Board (NRAB) or, alternatively, to an adjustment board established by the carrier and the employees." *Wheeling*, 789 F.3d at 691.  The adjustment board "has exclusive jurisdiction to resolve a minor dispute."  *Consol. Rail Corp.*, 491 U.S. at 304.   A district court has no subject matter jurisdiction to address a minor dispute, and no authority to order that the *status quo* be maintained.  *Ibid.*; *Airline*

*Professionals Ass'n of Int'l Bhd. of Teamsters, Local Union No. 1224, AFL-CIO v. ABX Air, Inc.*, 274 F.3d 1023, 1028 (6th Cir. 2001).

The first order of business to address, then, when such labor disputes are presented to the district court is whether the dispute is major or minor.  In this case, the parties each have characterized the dispute over new hire rates of pay according to their respective interests.  The plaintiffs say it is major; the defendant insists it is minor.  Courts have recognized, however, the foolishness of labeling such disputes based on which side wins the race to the courthouse.  "[T]here is danger in leaving the characterization of the dispute solely in the hands of one party.'"  *Consol. Rail Corp.*, 491 U.S. at 305.  Therefore, when there is a disagreement over the nature of the labor dispute, it is the Court's obligation to recharacterize the dispute consistent with the statutory definitions.  *Id.* at 306; *Wheeling*, 789 F.3d at 692.

The Supreme Court has explained that major disputes are defined by 45 U.S.C. § 152 Seventh (stating that no carrier "shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements") and § 156 (establishing the mediation procedures mentioned earlier).

> This statutory category "relates to disputes over the formation of collective agreements or efforts to secure them.  They arise where there is no such agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy.  They look to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past."

*Consol. Rail Corp.*, 491 U.S. at 302 (quoting *Burley*, 325 U.S. at 723).

The statutory basis for the minor dispute category is 45 U.S.C. § 152 Sixth (describing disputes "arising out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions") and § 153 First (i) (describing the arbitration

-6-

process for such grievances).  A minor dispute "'contemplates the existence of a collective agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one.'"  *Consol. Rail Corp*., 491 U.S. at 303 (quoting *Burley*, 325 U.S. at 723).

All of this boils down, the Court explained, to whether resolution of an employer's contested action can be made by deciding whether "the terms of an existing agreement either establish or refute the presence of a right to take the disputed action." *Consol. Rail Corp*., 491 U.S. at 305.  That an employer says as much, however, is not enough.  Instead, the court must decide for itself whether "the dispute may be conclusively resolved by interpreting the existing agreement."  *Ibid.* "Accordingly, '[w]here an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties collective-bargaining agreement.  Where, in contrast, the employer's claims are frivolous or obviously insubstantial, the dispute is major.'"  *Wheeling*, 789 F.3d at 692 (quoting *Consol. Rail Corp*., 491 U.S. at 307).

Local 1224 points out that it has served its Section 6 notice and the parties have been in negotiations over the very issue on which Kalitta unilaterally acted: new hire pay rates.  That the subject of a dispute is the object of ongoing negotiations, however, does not automatically render the dispute a major one.  *Airline Professionals Ass'n, Teamster Local Union 1224 v. ABX Air, Inc.*, 400 F.3d 411, 415 (6th Cir. 2005).  The Court must make that determination on the specific facts before it.  *Ibid.*

Kalitta characterizes this dispute as requiring only the interpretation of the CBA.  It contends that it retains the discretion as an employer to waive the OE requirement, which in turn allows it to

increase the rate of pay of new hires to the level of flight pay. Kalitta does not dispute that its goal in doing so is to increase new hire pay. Kalitta argues that there is a shortage of pilots in the aviation industry and it needs to raise the new hire pay so that it can attract new pilots in order to maintain its business obligations.

But that argument collides with the language in Section 5 of the CBA, which states specifically that "[a] new hire Crewmember *will not receive Flight Pay until he completes OE*." (emphasis added). Kalitta certainly retains the right to prescribe a training regimen, consistent with FAA regulations. But OE is a distinct component of training mandated by the FAA. It appears to be a benchmark in the CBA for establishing pay scales for pilots employed by the defendant. For example, in Section 1(D)(2)(f), pay protection is contingent on the "successful completion of OE." Section 16(J)(1) states that "[e]xcept for OE, a Crewmember will not be required to fly a revenue flight while in initial or transition Training." Nonetheless, Kalitta presents three arguments in its attempt to justify its position that the CBA does not prevent it from unilaterally raising the pay for newly hired pilots: (1) it contends that the majority of new hires are not subject to the CBA, and therefore are not bound by Section 5; (2) even if the CBA applies, Kalitta retains management rights under Section 4 to waive the OE requirement; and (3) new hires are probationary crewmembers and have no right to arbitrate any grievance. The Court must determine if these arguments "are frivolous or obviously insubstantial." The Court believes they are.

*First*, Kalitta's belief that new hires are not covered by the CBA is based apparently on contract language that says new hires are not required to become members of Local 1224 before the ninetieth day of their employment. Union membership, however, is irrelevant to the reach of the CBA. Even if a new hire fails to join the union after 90 days, he or she still is required to pay a

"service charge as a contribution for the administration of [the CBA]." And the CBA does not contain language excluding non-members. Nor could it. As the exclusive bargaining representative, "the union is obliged 'fairly and equitably to represent all employees . . ., union and nonunion,' within the relevant unit." *Abood v. Detroit Bd. of Ed.*, 431 U.S. 209, 221 (1977).

Paradoxically, after arguing new hires are not covered by the CBA, Kalitta relies on the CBA's provision that new hires are "Probationary Crewmembers" for the first twelve months of employment to conclude that it can waive the OE requirement of Section 5. It argues that because "Training of Probationary Crewmembers will be handled at the Company's discretion" under Section 16(J)(2) of the CBA, Kalitta can modify those training conditions at any time before the end of the probationary period. That provision addresses training, not pay. And it does not permit the company to waive OE, or the express requirements of other sections of the CBA. Kalitta's first argument is "obviously insubstantial."

*Second*, Kalitta argues that the Management Rights section of the CBA gives it all of the traditional management rights that are not specifically modified by an express provision of the CBA. From that indisputable proposition, Kalitta reasons that it has the right to decide how training is conducted, and therefore waiving the OE requirement as a condition of receiving flight pay is impliedly within its authority under the CBA. That argument, however, runs headlong into the mandatory language of Section 5, which states, "A new hire Crewmember *will not receive Flight Pay until he completes OE*." (Emphasis added). Section 5 is an express provision of the CBA that modifies the traditional management rights, at least with regard to waiving the OE requirement. "Because the language of the scope rule is express, [the Court] need not consider any implied

-9-

terms." *Wheeling*, 789 F.3d at 694. Therefore, there is no support in the CBA under the Management Rights section to waive the OE requirement.

*Third*, Kalitta argues that under Section 20(F), probationary crewmembers have no right to arbitrate *any* grievance. This assertion is patently false. Section 20(F) states, "Nothing in this Agreement shall be construed to extend the right to arbitrate a grievance concerning his discipline or discharge to a Probationary Crewmember, or to require that such discipline or discharge be Based on just cause. However, a Probationary Crewmember shall have the right to submit *any* grievance . . . ." (Emphasis added). The arbitration prohibition is limited to discipline or discharge for good cause; a probationary crewmember has the right to file a grievance for any other reason. Unless paying new hires flight pay amounts to discipline under the CBA, Kalitta can find no support in the CBA to waive the OE requirement.

The dispute in this case plainly involves "change [to] rates of pay," 45 U.S.C. § 152 Seventh, not "the interpretation or application of agreements concerning rates of pay," 45 U.S.C. § 152 Sixth. As the defendant's arguments demonstrate, its actions in raising the pay rate for new hires cannot "arguably [be] justified by the terms of the parties collective-bargaining agreement." *Wheeling*, 789 F.3d at 692. Therefore, the present dispute is a major dispute over which this Court has subject matter jurisdiction under the RLA.

## B.

The plaintiffs seek an injunction to maintain the *status quo* relating to the pay rate for new hires while the negotiations are pending according to the process outlined in 45 U.S.C. § 156 and *Wheeling*, 789 F.3d 681, 690-91. When considering whether to issue a preliminary injunction, courts weigh these factors: (1) whether the movant has demonstrated a substantial likelihood of

-10-

success on the merits; (2) whether the movant will suffer irreparable injury without the injunction; (3) would the preliminary injunction cause substantial harm to others; and (4) will the public interest be served if the injunction issues. *Overstreet v. Lexington–Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir.2002) (citation omitted); *McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc). These factors must be balanced with one another, *Overstreet*, 305 F.3d at 573, and "no one factor is controlling," *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000) (citing *Michigan State AFL–CIO v. Miller,* 103 F.3d 1240, 1249 (6th Cir. 1997). However, in the context of a labor dispute under the RLA, a district court may "enjoin a violation of the status quo pending completion of the required procedures, without the customary showing of irreparable injury." *Consol. Rail Corp.*, 491 U.S. at 303 (citing *Detroit & T.S.L.R. Co. v. Transportation Union*, 396 U.S. 142 (1969). "[W]hat must be preserved as the status quo are the actual, objective working conditions out of which the dispute arose, irrespective of whether those conditions are covered in an existing collective agreement." *Detroit & T.S.L.R. Co.*, 396 U.S. at 143.

The insubstantiality of Kalitta's arguments that its actions can be justified by an interpretation of the CBA suggest that the plaintiff likely will succeed on the merits of its claims. As to the substantial harm to others and public interest factors, Kalitta argues that it will be substantially harmed because it will be less able to hire new pilots from a shrinking pool of candidates. However, the plaintiffs point out that if Kalitta is allowed to succeed in its attempt to unilaterally alter the CBA, the viability of the union as a legitimate bargaining partner would be severely undermined. And changing the new hire policy for economic reasons to remain competitive would frustrate the purpose of the RLA because any carrier could make the same claim

-11-

and thus alter the *status quo*.  But "the purpose of the *status quo* provision of the RLA 'is to guarantee only that existing collective agreements continue to govern the parties' rights and duties during efforts to change those agreements,' and that 'working conditions as expressed in an agreement shall not be altered.'"  *Wheeling*, 789 F.3d at 696 (quoting *Detroit & T.S.L.R. Co.*, 396 U.S. at 147-48).

That outside economic forces may incite Kalitta to alter the CBA by raising the pay for new hires does not alter the balance of interests.  In fact, those forces apparently were contemplated by Congress when it enacted the RLA.  As the Sixth Circuit explained, "[b]ecause one party may wish to change the status quo without undue delay, the power granted in the RLA to the other party 'to preserve the status quo for a prolonged period' encourages the moving party to compromise and reach agreement without interrupting commerce."  *Ibid.*  Permitting unilateral self help in contravention of a specific provision of the CBA — whose terms are presently the subject of negotiations — would be a course "sharply at variance with the overall design and purpose of the Railway Labor Act."  *Detroit & T.S.L.R. Co.*, 396 U.S. at 148.

Here, as in *Wheeling*, Section 6 notice was given beginning the statutory process to negotiate and amend parts of the CBA, which included new hire pay.  The parties have not yet reached a voluntary agreement to amend the CBA. The parties jointly requested National Mediation Board mediation.  However, before coming to a resolution, Kalitta decided to change the new hire pay rate unilaterally, despite contrary language in the CBA.  Like the railroad in *Wheeling*, Kalitta argues, among other things, that it has the managerial discretion to modify the CBA.  However, as explained above, Kalitta's arguments are "frivolous or obviously insubstantial in light of the express language" of the CBA.   Kalitta's attempt to raise the new hire pay by waiving some of the training

requirements in the CBA is not even arguably justified by any provision of the CBA, and appears to be nothing more than an end run around its bargained-for agreement with Local 1224.

An injunction preserving the *status quo* is justified.

III.

The plaintiffs have shown that they are entitled to an injunction to preserve the *status quo* concerning the terms of the collective bargaining agreement presently in effect with defendant Kalitta Air. Those terms focus on the rate of pay for new hires who have not completed their Operating Experience. No security will be required because no damages will be caused to the persons bound by the preliminary injunction.

Accordingly, it is **ORDERED** that the motion for preliminary injunction [dkt. #3] is **GRANTED**.

It is further **ORDERED** that the defendant, Kalitta Air, L.L.C., its agents, servants, employees, attorneys and all those in active concert and participation with them who receive actual notice of this order, are **RESTRAINED AND ENJOINED** from violating the terms of the Collective Bargaining Agreement between Kalitta Air, L.L.C. and International Brotherhood of Teamsters, Airline Division and Airline Professionals Association of the International Brotherhood of Teamsters, Local No. 1224, including the Section 5 New Hire Pay provision. The defendant must adhere to the terms of that collective bargaining agreement and maintain the *status quo* working conditions unless and until those terms are altered in bargaining with plaintiffs under Section 6 of the Railway Labor Act, or until further order of the Court.

s/David M. Lawson          <br>DAVID M. LAWSON<br>United States District Judge

Dated:  October 30, 2015

-13-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 30, 2015.

s/Susan Pinkowski
SUSAN PINKOWSKI